### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on January 8, 2020

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal Case No: 20-MJ-00048 |
| | : | |
| v. | : | **VIOLATIONS:** |
| | : | |
| **CHANCE BARROW,** | : | **18 U.S.C. § 1343** |
| | : | **(Wire Fraud)** |
| | : | |
| | : | **18 U.S.C. § 1001(a)(1)** |
| | : | **(Concealment of Material Facts)** |
| | : | |
| Defendant. | : | |

## INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

At all times material to this Indictment:

1.  In or about May 2018, defendant CHANCE BARROW applied to be a law enforcement officer with the Treasury Inspector General for Tax Administration ("TIGTA"), the federal law enforcement agency charged with investigating and preventing waste, fraud, and abuse within the Internal Revenue Service.

2.  TIGTA hired BARROW with a start date of on or about October 1, 2018. Carrying a firearm is a requirement for employment as a TIGTA law enforcement officer. On July 24, 2019, TIGTA learned that BARROW was the subject of a Temporary Restraining Order containing allegations of domestic violence, which required him to relinquish his TIGTA-issued firearm.

## BARROW's Previous Employment History

3.      In or about 2008, BARROW assumed a position as an active duty Army intelligence analyst. Before doing so, he completed the Standard Form 86, Questionnaire for National Security Positions, commonly referred to as an "SF-86," which was used by the United States Government in conducting background investigations for persons under consideration for national security positions. Following a background investigation, BARROW was granted a National Security Clearance.

4.      In 2014, BARROW's National Security Clearance was renewed, following his submission of an updated SF-86 and a subsequent background investigation.

5.      In 2016, following his discharge from active duty military service, BARROW obtained employment as a civilian special agent with Army-CID.

6.      On or about March 6, 2018, Person A reported to the Naval Criminal Investigative Service (NCIS) that BARROW had sexually assaulted Person A on a Navy military base, where BARROW lived. NCIS, the federal law enforcement agency of the U.S. Department of the Navy, opened a criminal investigation into BARROW's conduct.

7.      Also on or about March 6, 2018, after NCIS initiated the criminal investigation, NCIS notified BARROW of the allegations, and Army-CID took steps to suspend BARROW's National Security Clearance; limited his access to all law enforcement systems; secured his weapon, badge, credentials, and all other law enforcement equipment; and placed him on administrative office duty.

8.      Shortly after he was made aware of the NCIS investigation, BARROW told his second-line Army-CID supervisor, a Special Agent-in-Charge (SAC), about the sexual assault

allegations. BARROW also expressed frustration with the SAC for relegating BARROW to administrative office duties and for suspending his National Security Clearance.

9. On or about April 27, 2018, BARROW resigned from Army-CID. Prior to his resignation, BARROW had been advised by Army-CID that he was facing termination and that his National Security Clearance was being suspended. The NCIS criminal investigation into BARROW's conduct remained open and pending until August 2018; in September 2018, NCIS submitted to Army-CID a full copy of its report of investigation, which substantiated the sexual assault and abuse allegations against BARROW.

## COUNTS ONE AND TWO
### (Wire Fraud)

10. From on or about May 11, 2018, to on or about July 29, 2019, in the District of Columbia and elsewhere, the defendant, CHANCE BARROW, devised and intended to devise a scheme to defraud and to obtain money and property from TIGTA by means of materially false and fraudulent pretenses, representations, and promises, as more fully described below.

### Purpose of the Scheme to Defraud

11. The purpose of the scheme was for CHANCE BARROW to obtain paid employment with TIGTA by making materially false and fraudulent representations regarding his employment history to hide the circumstances of his resignation from Army-CID in the midst of serious allegations of misconduct.

### Manner and Means

12. The manner and means included BARROW's submission of false and misleading written answers to questions in the TIGTA employment application; false, misleading,

3

and outdated supplemental materials to that application; and false and misleading answers to a telephonic screening interview that was part of the TIGTA application process.

### Acts in Furtherance of the Scheme

*BARROW'S TIGTA Application*

13. Between on or about May 11, 2018, and on or about May 24, 2018, TIGTA solicited and accepted applications for employment as a special agent via the USA Jobs website. BARROW submitted his application during this time period.

14. In order to submit his application, USA Jobs required BARROW to certify that, to the best of his knowledge and belief, "all the information submitted by me with my application for employment is true, complete, and made in good faith…and that I understand that misrepresenting my experience or education, or providing false or fraudulent information in or with my application may be grounds for not hiring me…I also understand that false or fraudulent statements may be punishable by fine or imprisonment (18 U.S.C. §1001)."

15. The TIGTA application required BARROW to answer a series of questions related to his suitability for employment. In his application, BARROW gave false and misleading answers with regard to his federal service, which concealed the status of his employment and the circumstances under which he resigned from Army-CID, as follows:

    a. In response to Question 3, in which he was asked if he is a "current federal employee," BARROW stated that he was not a current federal employee.

    b. In Question 4, BARROW was asked by what agency and organization he was currently employed. BARROW answered "not applicable."

  c. In response to Question 6, which solicited additional information about his current agency of employment, BARROW stated that he was currently employed by "Department of Defense – United States Army Criminal Investigations Command."

  d. In response to Question 7, which stated, "[i]f you are a current Federal employee, what is your duty station," BARROW stated that his duty station was Irvine, California, for his "current" federal position.

  e. In response to Question 8, which stated, "[i]f you are a Federal employee, under what type of appointment are you currently serving," BARROW stated that the type of federal employment he was "currently serving" was an appointment as a "career-conditioned Appointment, competitive service."

 16. BARROW attached to his TIGTA application several supporting documents, including (a) a résumé, (b) an application for veterans' preference (known as a Standard Form 15, or "SF-15"), and (c) a Notification of Personnel Action (known as a Standard Form 50 or "SF-50"), dated January 7, 2018. BARROW provided these documents in furtherance of his false representations, as follows:

  a. BARROW provided a résumé that stated that BARROW held an active National Security Clearance, even though BARROW had been told that his clearance was being suspended. BARROW'S résumé also contained misleading information suggesting that he would soon obtain a bachelor's degree.

  b. BARROW provided an outdated SF-50, which is used to verify federal civilian employment. On April 27, 2018, Army-CID had generated an SF-50 for BARROW, which stated that BARROW had resigned from Army-CID. The SF-50 BARROW chose to include with his TIGTA application, however, was dated January 7, 2018, and had been generated

to reflect an executive order granting a pay raise. By submitting the outdated SF-50 with his TIGTA application, BARROW further concealed from TIGTA the fact that he had resigned from Army-CID following allegations of misconduct, and while he was under criminal investigation.

        c.      BARROW provided an SF-15—which is used to establish veteran status—that falsely stated that he was currently employed as an "1811" criminal investigator. "1811" is a designation used by the federal government's Office of Personnel Management to identify special agent criminal investigators. By submitting the false SF-15, BARROW further concealed from TIGTA the fact that he had resigned from Army-CID.

*BARROW'S Pre-Employment Screening Interview*

17.      Based on representations BARROW made in his application about his experience conducting law enforcement activities, coupled with his misleading application, and following an initial interview, BARROW was selected for a pre-employment screening interview.

18.      On or about July 6, 2018, BARROW participated in the pre-employment screening interview with TIGTA by telephone. He was advised of his obligations to tell the truth and provide complete information. BARROW told the interviewer that he was not currently a federal employee, and that he was not leaving current employment because of allegations of misconduct or other unfavorable circumstances. BARROW concealed the fact that he had just resigned from Army-CID after being advised that Army-CID planned to terminate his employment.

*BARROW'S SF-86C*

19.      TIGTA special agents are required to hold a National Security Clearance. Accordingly, on July 6, 2018, following the pre-employment screening interview, BARROW was asked to fill out Standard Form-86C ("SF-86C"), which is used to update or certify answers from

a prior SF-86, in this case BARROW's 2014 SF-86. In its instructions, the SF-86C explicitly notified applicants of their duty to disclose material information by stating that under 18 U.S.C. § 1001, "knowingly falsifying or concealing a material fact is a felony."

20.     Question 13 of BARROW's SF-86C asked if there had been changes to BARROW's employment history since the completion of his 2014 SF-86.

    a. In response to Question 13C on his 2014 SF-86, BARROW had stated that he had never "quit a job after being told you'd be fired," or "left a job by mutual agreement following charges or allegations of misconduct."

    b. In his 2018 SF-86C, BARROW updated his response to Question 13 by writing, "I was employed as a Criminal Investigator with the Army Criminal Investigations Command, Major Procurement Unit from September 2016 – April 2018. My reference for this position was my Supervisor, Special Agent Person B…." Person B was not BARROW's supervisor at the time he resigned from Army-CID and was BARROW's close friend and confidante.

21.     Question 25 of BARROW's SF-86C asked if there had been changes to BARROW's investigations and clearance record since the completion of his 2014 SF-86.

    a. In his 2014 SF-86, BARROW stated that he had never had his National Security Clearance "denied, suspended, or revoked."

    b. In his 2018 SF-86C, BARROW falsely answered "no" when asked if there had been any changes to his investigations and clearance record, thus concealing the fact that he was under criminal investigation, and that shortly after March 6, 2018, Army-CID's Special Agent in Charge had informed BARROW that his National Security Clearance was being suspended.

### Execution of the Scheme

22.     On or about the dates listed below, in the District of Columbia, and elsewhere, the defendant, CHANCE BARROW, for the purpose of executing and attempting to execute the above-described scheme to defraud, did knowingly and willfully transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds; that is, each time BARROW submitted employment materials to TIGTA, including those described below, be caused an interstate wire to be transmitted into the District of Columbia:

| Count | Date (Approx.) | Description |
| --- | --- | --- |
| ONE | Between May 11, 2018, and May 24, 2018 | BARROW electronically transmitted his fraudulent job application and supplementary materials to TIGTA in Washington, DC via the USAJOBS.com website, whose server is located in Macon, Georgia. |
| TWO | July 6, 2018 | BARROW emailed his fraudulent SF-86C from Maryland to a TIGTA program analyst, based in Washington, D.C. |

**(Wire Fraud, in violation of Title 18, United States Code, Section 1343)**

### COUNT THREE
### (Concealment of Material Facts)

23.     The allegations contained in paragraphs one through nine and thirteen through twenty-one of this Indictment are incorporated herein by reference as if stated in full.

24.     When responding to TIGTA during the employment application process, BARROW had—and was repeatedly advised of—his duty to provide material information to TIGTA and not to willfully make misleading statements or omit materials facts.

25.     As described above, from on or about May 11, 2018, to on or about July 29, 2019, in the District of Columbia and elsewhere, defendant CHANCE BARROW did unlawfully,

8

knowingly, and willfully falsify, conceal, and cover up by a trick, scheme, and device, material facts in the course of his application to and hiring by TIGTA, including that he previously resigned from a position with Army-CID prior to Army-CID's proposed termination of BARROW, and that BARROW did so following allegations of BARROW's misconduct that were the subject of a NCIS criminal investigation.

26.     The purpose of BARROW's concealment scheme was to deprive TIGTA of material adverse information about BARROW's employment and security clearance history, so that TIGTA would hire BARROW despite the disqualifying information. Has TIGTA known of the NCIS criminal investigation, BARROW would not have been hired as a law enforcement officer.

**(Concealment of Material Facts, in Violation of Title 18,
United States Code, Section 1001(a)(1))**

A TRUE BILL:

FOREPERSON

*Michael R. Sherwin*
ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA