UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CHANCE BARROW,<br><br>  Defendant. | Criminal No. 20-127 (CKK) |

MEMORANDUM OPINION
(February 19, 2021)

Defendant Chance Barrow is charged with two counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts One & Two) and one count of concealment of material facts in violation of 18 U.S.C. § 1001(a)(1) (Count Three). *See* Indictment ¶¶ 10–26, ECF No. 25. These charges arise from Defendant Barrow's application for employment as a law enforcement officer with the Treasury Inspector General for Tax Administration ("TIGTA"), a federal law enforcement service. The Indictment alleges that Defendant Barrow concealed from TIGTA that he had resigned from his previous position as an Army-CID intelligence officer and that his National Security Clearance would be suspended because he was under criminal investigation for an alleged sexual assault. *Id.* ¶¶ 12, 15, 16, 25.

Defendant Barrow now moves to dismiss Count Three of the Indictment, arguing that it fails to state an offense of concealment under § 1001(a)(1) because he had no legal duty to disclose the circumstances surrounding his resignation from Army-CID and the facts alleged in the Indictment are insufficient to establish that he "knowingly and willfully" concealed material information. He further contends that dismissal is appropriate based on erroneous legal

1

instructions to the grand jury. Upon consideration of the Indictment, the parties' briefs,[1] relevant legal authority, and the record as a whole, the Court DENIES Defendant's Motion to Dismiss Count Three of the Indictment.

## I. BACKGROUND

For purposes of a motion to dismiss, the Court must accept the facts alleged in the indictment as true. *United States v. Craig*, 401 F. Supp. 3d 49, 54 (D.D.C. 2019). Accordingly, the facts recited here provide information pertinent to assessing Defendant Barrow's legal challenges to the Indictment, but should not be read to "signal the Court's point of view about the accuracy of the allegations or the defendant's guilt or innocence in this case. The facts have yet to be proved, and the defendant is presumed to be innocent unless and until the government proves his guilt beyond a reasonable doubt." *Id*.

In March 2018, the Naval Criminal Investigative Service ("NCIS") opened a criminal investigation into Defendant Barrow, after receiving a report that he had committed a sexual assault. Indictment ¶ 6. At the time, Defendant Barrow was employed as a civilian special agent for Army-CID. *Id.* ¶ 5. He held a National Security Clearance—which he had obtained in 2008 and renewed in 2014. *Id.* ¶¶ 3–4. NCIS notified Barrow of the allegations and his employer, Army-CID, "took steps to suspend [Defendant Barrow's] National Security Clearance, limited his access to all law enforcement systems; secured his weapon, badge, credentials, and all other law enforcement equipment; and placed him on administrative office duty." *Id.* ¶ 7. Barrow

---

[1] The Court's consideration has focused on the following documents:
- Defendant's Motion to Dismiss Count Three ("Def.'s Mot."), ECF No. 39;
- The Government's Response to Defendant's Motion to Dismiss Count Three ("Gov.'s Opp'n"), ECF No. 41; and
- Defendant's Reply to Government's Response to His Motion to Dismiss Count Three ("Def.'s Reply"), ECF No. 42.

"expressed frustration" to one of his supervisors of his placement on office duty and the suspension of his National Security Clearance. *Id.* ¶ 8. Barrow then resigned from his position in April 2018, after being "advised by Army-CID that he was facing termination and that his National Security Clearance was being suspended." *Id.* ¶ 9.

In May 2018, Defendant Barrow applied to be a law enforcement officer with TIGTA through the USA Jobs website. *Id.* ¶ 13. He was selected for a screening interview in July 2018. *Id.* ¶ 18. The charges in this action arise from his application submissions and interview responses; the Indictment alleges that Defendant Barrow intentionally gave false, misleading, or incomplete answers to conceal the circumstances surrounding his resignation from Army-CID and the ongoing criminal investigation related to the sexual assault allegation. *Id.* ¶¶ 11, 12, 25. For example, the Indictment alleges that Defendant Barrow intentionally submitted with his application an outdated Standard Form-50 (verifying federal civilian employment) to conceal that he had resigned from Army-CID despite having a more recent version of the same form reflecting his resignation, *id.* ¶ 16(b), and a Form Standard Form-15 (establishing veteran status) that falsely stated he was currently employed as a criminal investigator, *id.* ¶ 16(c). Upon submitting these materials through the USA Jobs website, Defendant Barrow was required to certify that "to the best of my knowledge and belief, all the information submitted by me with my application for employment is true, complete, and made in good faith . . . I also understand that false or fraudulent statements may be punishable by fine or imprisonment (18 U.S.C. 1001). Def.'s Mot. Ex. A; *see* Indictment ¶ 14. Defendant Barrow was also required to complete a Standard Form-86C ("SF-86C") to provide any updates to the Standard Form-86 (Questionnaire for National Security Positions) ("SF-86")—which he had previously completed in 2014 when he renewed his security clearance. Indictment ¶¶ 19, 29. The Indictment alleges that Defendant

Barrow failed to provide updates to questions which asked if he had ever left a job after being told he would be fired or following charges or allegations of misconduct. *Id.* ¶ 20(a). The instructions for the SF-86C provide notice that "[t]he United States Criminal Code (title 18, section 1001) provides that knowingly falsifying or *concealing* a material fact is a felony which may result in fines and/or up to 5 years of imprisonment." Def.'s Mot. Ex. C (emphasis added); *see also* Indictment ¶ 19. The Indictment further alleges that, after being advised of his obligations to tell the truth and provide complete information during his screening interview, Barrow told the interviewer, upon being asked, that he was not leaving his current employment because of allegations of misconduct or other unfavorable circumstances. Indictment ¶ 18.

In addition to the allegations that Defendant concealed the circumstances surrounding his resignation, the Indictment also alleges that Defendant Barrow represented that he held an active National Security Clearance (which the TIGTA position required, *id.* ¶ 19), despite knowing that his clearance would be suspended due to the ongoing NCIS criminal investigation.[2] Specifically, Defendant Barrow submitted a resume with his application on the USA Jobs website indicating that he held an active security clearance. *Id.* ¶ 16(a). He also answered "no" to questions on the SF-86C which asked if there had been any changes to his "investigations and clearance record" since he completed his SF-86 form in 2014. *Id.* ¶ 21.

Defendant Barrow was hired for the TIGTA position to begin work on October 1, 2018. *Id.* ¶ 2. He held the position until July 2019. *Id.* ¶ 3. The government contends that had TIGTA

---

[2] In its Opposition to Defendant's Motion to Dismiss Count Three, the government indicates that Defendant's security clearance was never formally "suspended" due to an administrative error. Gov.'s Opp'n at 3 n.3. The government claims, however that Defendant knew his clearance would be suspended, and did not know about the administrative error. *Id.*

4

known of Defendant Barrow's employment and security clearance history, he would not have been hired as a law enforcement officer. *Id.* ¶ 26.

A grand jury returned an Indictment charging Defendant Barrow with two counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts One & Two) and one count of concealment of material facts in violation of 18 U.S.C. § 1001(a)(1) (Count Three). *See* Indictment ¶¶ 10–26. In the present motion, Defendant Barrow seeks dismissal of only Count Three, which charges him with "unlawfully, knowingly and willfully, falsify[ing], conceal[ing], and cover[ing] up by a trick, scheme, and device, material facts in the court of his application to and hiring by TIGTA, including that he previously resigned from a position with Army-CID prior to Army-CID's proposed termination" and that he did so "following allegations of . . . misconduct that were the subject of a NCIS criminal investigation." *Id.* ¶ 25. The purpose of this alleged concealment scheme was "to deprive TIGTA of material adverse information about [Defendant Barrow's] employment and security clearance history, so that TIGTA would hire [him] despite the disqualifying information." *Id.* ¶ 26.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), a criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," including for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (quoting *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis in original)). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend,

5

and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("[T]o be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense.").

"[A] pretrial motion to dismiss an indictment allows a district court to review the sufficiency of the government's pleadings, but it is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Mosquera-Murillo,* 153 F. Supp. 3d 130, 154 (D.D.C. 2015) (internal citation and quotation marks omitted). Accordingly, when considering a motion to dismiss an indictment, the Court "assumes the truth of [the government's] factual allegations." *United States v. Ballestras*, 795 F.3d 138, 149 (D.C. Cir. 2015). Dismissal may be granted "only in unusual circumstances" since it "directly encroaches upon the fundamental role of the grand jury." *United States v. Stone*, 394 F. Supp. 3d 1, 13 (D.D.C. 2019) (internal citation and quotation marks omitted).

A criminal defendant may also move to dismiss an indictment based on "a defect in instituting the prosecution," including "an error in the grand-jury proceeding[.]" Fed. R. Crim. P. 12(b)(3)(A)(v). But "the defendant seeking such relief 'faces a very heavy burden.'" *United States v. Saffarinia*, 424 F. Supp. 3d 46, 80 (D.D.C. 2020) (quoting *United States v. Trie*, 23 F. Supp. 2d 55, 61 (D.D.C. 1998)). "Grand jury proceedings are 'accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process.'" *Id.* (quoting *United States v. Mechanik*, 475 U.S. 66, 75 (1986)). "[D]ismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grandy jury's decision to indict, or if there is grave doubt that the

decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (internal citation and quotation marks omitted). "A great deal more than mere speculation that a grand jury has been improperly instructed is required to satisfy this standard." *Trie*, 23 F. Supp. 2d at 61.

### III.   DISCUSSION

**A. The Indictment Sufficiently States an Offense Under 18 U.S.C. § 1001(a)(1)**

Defendant first argues that Count Three should be dismissed pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) for its failure to state an offense under 18 U.S.C. § 1001(a)(1). *See* Def.'s Mot. at 4–12. Section 1001(a)(i) exposes to criminal liability any individual who "knowingly and willfully – falsifies, conceals, or covers up by any trick, scheme, or device a material fact" in "any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." 18 U.S.C. § 1001(a)(1). To prove an offense under § 1001(a)(1), the government must establish: "(1) the defendant had a duty to disclose material information, (2) the defendant falsified, concealed, or covered up such a fact by trick, scheme, or fraud, (3) the falsified, concealed, or covered up fact was material, (4) the falsification and/or concealment was knowing and willful, and (5) the material fact was within the jurisdiction of the Executive Branch." *Craig*, 401 F. Supp. 3d at 62–63 (citing *United States v. White Eagle*, 721 F.3d 1108, 1116 (9th Cir. 2013)) (additional citations omitted).

Defendant challenges the sufficiency of the Indictment with respect to two of these elements: the "duty to disclose material information" and his "knowing and willful" concealment. *See* Def.'s Mot. at 5, 10. Because the Court finds that the Indictment is sufficient with respect to both elements, dismissal of Count Three of the Indictment is not appropriate at this time.

7

### 1. Legal Duty to Disclose

Defendant Barrow first argues that Count Three must be dismissed because he was under no "legal duty" to disclose the circumstances regarding his resignation from Army-CID, including the status of his security clearance. *See* Def.'s Mot. at 5. Defendant correctly notes that "there must be a legal duty to disclose in order for there to be a concealment offense in violation of § 1001(a)(1)." *United States v. Safavian,* 528 F.3d 957, 964 (D.C. Cir. 2008); *see also United States v. Curran*, 20 F.3d 560, 566 (3d Cir. 1994) ("In order to convict under a section 1001 concealment charge, the government must show that a defendant had a legal duty to disclose the facts at the time he was alleged to have concealed them."). "Concealment cases in this circuit and others have found a duty to disclose material facts on the basis of specific requirements for disclosure of specific information." *Safavian*, 528 F.3d at 964 (collecting cases). "Those requirements can be found in statutes, regulations, or *government forms*." *Craig*, 401 F. Supp. 3d at 67 (emphasis added) (internal citations omitted). Whether a defendant had a legal duty to disclose the information allegedly withheld is a matter of law. *United States v. Crop Growers Corp.*, 954 F. Supp. 335, 345 (D.D.C. 1997).

This requirement of a duty of disclosure "arises out of the constitutional prerogative that an individual charged with a crime must have been on notice that his conduct could violate the law." *Craig*, 401 F. Supp. 3d at 64 (citing *Safavian*, 528 F.3d at 964, quoting *United States v. Kanchanalak*, 192 F.3d 1037, 1046 (D.C. Cir. 1999) ("To comply with Fifth Amendment due process, the defendant must have 'fair notice . . . of what conduct is forbidden. . . . [T]his 'fair warning' requirement prohibits application of a criminal statute to a defendant unless it was reasonably clear at the time of the alleged action that defendants' actions were criminal.'")). "Due process concerns dictate the finding that, where there is no fair notice that specific conduct

is forbidden, or compelled, that conduct cannot be prosecuted." *Crop Growers*, 954 F. Supp. at 346.

While Defendant Barrow is correct that these legal principles apply to a prosecution under § 1001(a)(1), his case is distinguishable from *Safavian*, the D.C. Circuit decision upon which he primarily relies. *See* Def.'s Mot. at 3–4. In *Safavian*, the defendant was an employee of a federal agency who was convicted under § 1001(a)(1) for concealing material facts when he sought ethics advice from an internal ethics committee. 528 F.3d at 963–64. Specifically, the defendant had requested advice from the ethics officer but purportedly failed to provide all the information that would have been relevant to the ethics officer in rendering his opinion. *Id.* The defendant also failed to provide complete information to the agency's investigator with whom he voluntarily met. *Id.* The government in that case argued that the defendant's duty to disclose information was imposed upon him by "standards of conduct for government employees," which provided fourteen "general principles" of behavior—not by statute, regulation, or government form. *Id.* at 964. The D.C. Circuit reversed the defendant's conviction, concluding that these standards were too "vague" and that the "ethical principles" embodied in them did not impose a clear duty to disclose the information at issue. *Id.* at 964–65.

Defendant Barrow argues that his case is similar to the defendant in *Safavian* because he engaged in a "voluntary" communication with the government by electing to submit an application for federal employment, and such "voluntary" communications impose no *legal* duty to disclose "all relevant information." Def.'s Mot. at 6–7. Defendant notes specifically that the court in *Safavian* rejected the notion that "once one begins speaking when seeking government action or in response to questioning, one must disclose all relevant facts." *Id.* at 7 (citing *Safavian*, 528 F.3d at 965). But at least one other court in this jurisdiction has distinguished

9

*Safavian* in a case in which a defendant signed a form certifying that he had provided the government with complete responses to the questions asked. *See United States v. Bowser*, 318 F. Supp. 3d 154, 168–70 (D.D.C. 2018). In *Bowser*, the defendant argued that he had no legal duty to disclose material information in response to an inquiry by the Office of Congressional Ethics because he could have simply ignored the inquiry and document requests. *Id.* at 168. The court concluded that a legal duty of disclosure arose when the defendant signed a certification "given subject to 18 U.S.C. § 1001" stating that he had not "knowingly and willfully withheld, redacted, or otherwise altered any information" in response to the inquiry. *Id.* at 169. The court reasoned that "[w]hile the concealment of a fact that no one has a legal duty to disclose may not be a violation of [section 1001], such is not the case where a regulation or form requires disclosure." *Id.* at 170 (quoting *United States v. Perlmutter*, 656 F. Supp. 782, 789 (S.D.N.Y. 1987), *aff'd* 835 F.2d 1430 (2d Cir. 1987) (internal quotation marks omitted)). "A defendant's nondisclosure in such circumstances is 'distinguishable from a 'passive failure to disclose' or a mere silence in the face of an unasked question.'" *Id.* (quoting *United States v. Dale*, 782 F. Supp. 615, 627 (D.D.C. 1991) (internal quotation marks omitted)); *see also United States v. Cisneros*, 26 F. Supp. 2d 24, 42 (D.D.C. 1998) ("Since Cisneros responded to the questions, he had a duty to disclose all information necessary to make his statements truthful.").

      Here, as in *Bowser*, Defendant Barrow may not have had any "preexisting duty" to disclose documents or information to TIGTA. To be sure, the Court has not identified any legal authority giving rise to a blanket duty to "supply all relevant information in job applications." Def.'s Mot. at 9. Rather, the Court concludes that as in *Bowser*, a duty was "imposed upon" Defendant Barrow when he certified to the federal government that the application materials and forms he submitted were complete and true. *See Bowser*, 318 F. Supp. 3d at 170. For example, in

10

order to submit his employment application materials through the USA Jobs website, Defendant Barrow was required to certify that: "[A]ll the information submitted by me with my application for employment is true, complete, and made in good faith . . . I also understand that false or fraudulent statements may be punishable by fine or imprisonment (18 U.S.C. § 1001)."[3] Indictment ¶ 14 (emphasis added); *see also* Def.'s Mot. Ex. 1. And, according to the Indictment, despite certifying that the information he submitted was "true, complete, and made in good faith," Defendant Barrow submitted application materials representing that he was a "current federal employee" (despite having resigned after being told he would be terminated), that he held an "active security clearance" (despite being told it would be suspended), and he filed an outdated SF-50 (despite having an updated version stating that he had resigned). Indictment ¶¶ 15–16. The Indictment also alleges that the SF-86C form signed by Defendant Barrow "notified applicants of their duty to disclose material information by stating that under 18 U.S.C. § 1001, '*knowingly falsifying or concealing a material fact* is a felony.'"[4] *Id.* ¶ 19 (emphasis

---

[3] Defendant argues that the certification on the USA Jobs website did not provide him "fair warning" of criminal prosecution because it lacked any reference to *concealment* under 18 U.S.C. § 1001. He devotes a significant portion of his Reply to arguing that the certification provided him notice only that "affirmative false statements could be met with criminal prosecution." Def.'s Reply at 3–6. But, as noted here, the Indictment also alleges that the SF-86C form provides notice that "knowingly falsifying or concealing a material fact is a felony." Indictment ¶ 19; *see also* Def.'s Ex. C (SF-86C executed by Defendant Barrow). Defendant does not argue that this notice in the SF-86C did not create a legal duty; rather, he contends that "even assuming" this form created a legal duty of disclosure, the government "cannot overcome his burden to prove to a reasonable juror that [Defendant] knowingly and willingly omitted negative information." See Def.'s Reply at 6.

[4] The SF-86 also states: "The U.S. Criminal Code (title 18, section 1001) provides that knowingly falsifying or concealing a material fact is a felony which may result in fines and/or up to five (5) years imprisonment." *See* Def.'s Mot. Ex. B, at 2. Although Defendant Barrow indicates that he last completed this form in 2014, and only submitted the shorter SF-86C as part of his TIGTA application in 2018, *see* Def.'s Reply at 6–7, this language still provides notice that *concealing* material facts on a security clearance application may subject the applicant to criminal prosecution.

added). And, according to the Indictment, despite this notice, Defendant Barrow failed to provide required updates regarding whether he had "quit a job after being told you'd be fired," "left a job by mutual agreement following charges or allegations of misconduct," and had his security clearance "denied, suspended or revoked." *Id.* ¶¶ 20–21. The Indictment, therefore, provides sufficient allegations to demonstrate that a legal duty of disclosure was imposed upon Defendant Barrow when he certified—upon notice of potential prosecution under § 1001—that he had provided complete and true responses in his application materials and associated security clearance forms.

### 2. "Knowing and Willful" Concealment

Defendant Barrow next argues that Count Three should be dismissed because the "government cannot prove" that he "knowingly and willfully" concealed material information from TIGTA based on the facts alleged in the Indictment. Def.'s Mot. at 10. The Court finds that Defendant Barrow's arguments on this point do not test the sufficiency of the Indictment, but rather address the sufficiency of the government's evidence and raise factual disputes that must be resolved by the jury. *See Mosquera-Murillo,* 153 F. Supp. 3d at 154. For example, Defendant Barrow argues that the government "cannot prove" that he "knew the contents" of the original SF-86 form he submitted in 2014 when he completed the SF-86C form in 2018. Def.'s Mot. at 11; Def.'s Reply at 7. He further contends that the government "cannot prove" that he knew the status of his security clearance or the NCIS criminal investigation when he submitted his TIGTA application. Def.'s Mot. at 11–12. And lastly, Defendant Barrow argues that the government "cannot prove" that Defendant Barrow read and understood the warnings on the USA Jobs website "to prove that [Defendant] Barrow's actions in response were knowing and willful." *Id.* at 12. These arguments all plainly raise factual questions about what Defendant Barrow knew

and when he knew it. Such questions must be answered by the jury, based on the evidence presented and testimony solicited at trial—and not by the Court on a pre-trial motion to dismiss the indictment.

Defendant Barrow also argues that the government "cannot prove" that he "knowingly and willfully" concealed information from TIGTA because he gave "the most accurate answer" to the "specific question asked." *Id.* at 10. As an example, Defendant Barrow argues that his response that he was not leaving his "current employment because of allegations of misconduct or other unfavorable circumstances" was accurate because he was "not accused of any misconduct or unfavorable circumstances" *at work*; he was "accused in his personal life." *Id.* This contention raises another factual dispute that must be resolved by the jury because the Indictment alleges that Defendant Barrow resigned from his Army-CID upon learning that he would be terminated. *See* Indictment ¶¶ 9, 18. If the government sustains its burden of proof on this point, then a reasonable juror could conclude that the information that he would be terminated in light of the ongoing criminal investigation could indeed arise to an "unfavorable circumstance," making his response to that question false or misleading.

### B. Dismissal of Count Three is Not Warranted Based on Purported Errors in Grand Jury Proceedings

Defendant Barrow also argues that the Indictment should be dismissed because of alleged legal errors during grand jury proceedings. Def.'s Mot. at 12–13. Defendant contends that "[i]t is plain from the face of the Indictment that the grand jury received erroneous legal instructions causing it to indict Mr. Barrow on the legally incorrect omission theory[.]" *Id.* at 13.

A defendant seeking to overturn an indictment based on alleged errors in grand jury proceedings faces a "heavy burden" of demonstrating that any alleged deficiency had a "substantial influence" on the outcome of the grand jury proceeding. *Saffarinia*, 424 F. Supp. 3d

13

at 80. The Court finds that Defendant Barrow has not satisfied that burden here. He merely speculates that the government "caused" the grand jury to indict him "on the legally incorrect omission theory" based on "[t]he erroneous assertion of a legal duty." Def.'s Mot. at 13, n.6. Because, as discussed above, the Indictment sufficiently alleges a legal duty of disclosure, the Court does not agree with Defendant Barrow that "[i]t is plain from the face of the Indictment that the grand jury received erroneous legal instructions." *Id.* at 13. Accordingly, the Court shall not dismiss Count Three on the basis of any error in grand jury proceedings. *See Costello v. United States*, 350 U.S. 359, 363 (1956) ("[A]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is sufficient to call for trial on the merits.").

Similarly, Barrow's speculation that the government may have improperly instructed the grand jury does not warrant disclosure of the grand jury materials. *See, e.g.*, *Trie*, 23 F. Supp. 2d at 62 ("[T]he mere suspicion that the grand jury may not have been properly instructed with respect to the legal definition of contribution is insufficient to establish that [the defendant] is entitled either to dismissal of the indictment or to disclosure of grand jury materials."). The Court may authorize disclosure of grandy jury materials to a defendant "who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." *Saffarinia*, 424 F. Supp. 3d at 81 (internal citations omitted). "[C]onclusory or speculative allegations of misconduct do not suffice." *United States v. Tajideen*, 319 F. Supp. 3d 445, 472 (internal citations and quotation marks omitted). The Court finds that Defendant Barrow has offered no more than conclusory speculation alleging improper legal instructions to the grand jury. Accordingly, the Court shall decline at this time to order the production of grand jury charging instructions, as requested by Defendant Barrow in a footnote at the conclusion of his motion. *See* Def.'s Mot. at 13 n.6.

## IV.   CONCLUSION

For the reasons set forth above, the Court DENIES Defendant Barrow's Motion to Dismiss Count Three of the Indictment.  An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
